IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMMY KAMRUD, individually and as Managing Conservator to ASPYN KAMRUD., a minor child, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) COMPLAINT FOR DAMAGES<br>) **JURY TRIAL DEMANDED** |
| NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, and BNSF RAILWAY COMPANY, | )<br>)<br>) |
| Defendants. | |

## I.  IDENTIFICATION OF PARTIES

1. Plaintiff, TAMMY KAMRUD, is an adult U.S. citizen, and resident of the State of Montana and at all times herein was a fare-paying passenger onboard the *Empire Builder* 7/27 train, originating in Chicago, Illinois, owned and operated in the furtherance of interstate commerce by Defendant NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK (AMTRAK).

2. ASPYN KAMRUD. is a minor child, U.S. citizen and resident of the state of Montana.  At all times herein, Plaintiff's minor, ASPYN KAMRUD, was a fare-paying passenger onboard the *Empire Builder* 7/27 train, originating in Chicago, Illinois, owned and operated in the furtherance of interstate commerce by Defendant NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK (AMTRAK). Plaintiff, TAMMY KAMRUD, brings the cause of action pursuant to Rule 17(c)(1)(c).

3. On November 21, 2017, Plaintiff, TAMMY KAMRUD, was appointed Managing Conservator of ASPYN KAMRUD, a minor.

4. Defendant, NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK (AMTRAK), is a corporation organized and existing under the laws of the United States of America with a principal place of business in Washington, D.C. Defendant AMTRAK has an office for the transaction of business, and transacts business in Chicago, Illinois and in this District.

5. Defendant BNSF RAILWAY COMPANY (BNSF) is a Delaware corporation with its principal place of business in Fort Worth, Texas. BNSF is engaged in interstate commerce as a common carrier by railroad and owns and operates railyards, tracks, and rights of way in Chicago, Illinois and in this District.

6. There may be unknown entities or "John Does" who may be at fault and when their identification becomes known, these pleadings may be amended accordingly. This may include but is not limited to those entities involved in the design or construction of the route or of mechanical equipment used on the rail line at issue.

## II. JURISDICTION AND VENUE

7. The court has federal question jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, because AMTRAK is a congressionally incorporated corporation, over half of whose capital stock is owned by the federal government. Additionally, BNSF is a legal entity existing under the laws of the State of Delaware, that operates in 28 states, including in and throughout Illinois and in this District, and possesses a network of 32,500 route miles of train track throughout North America.

8. This Court has specific and personal jurisdiction of Plaintiffs' action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and because the events or omissions that give rise to the claim are related to the minimum contacts and business activities in this District conducted by both

AMTRAK and BNSF. These minimum contacts and business activities include but are not limited to the fact that AMTRAK's *Empire Builder* 7/27 train is a storied service line that originates in Chicago, Illinois and departs from Chicago's Union Station[1] where the crew's timetables are gathered, finalized and distributed. Additionally, BNSF agents located in AMTRAK's Chicago Control Center are responsible for supplying accurate information regarding the condition of the host railroad to AMTRAK and provided insufficient, incomplete and/or incorrect information to the AMTRAK *Empire Builder* 7/27 train crew in their operating timetable regarding necessary speed restrictions and accurate track conditions on the track where the derailment occurred.

9. Further, this Court has jurisdiction over BNSF as the owner, operator, maintainer, possessor, lessor, controller and entity otherwise responsible for a substantial portion of track upon which the *Empire Builder* 7/27 train traveled until it derailed near Joplin, Montana. Moreover, BNSF maintains agents, employees, offices, railyards, a police force, and railroad equipment in and throughout Illinois including substantially in this District. Personal jurisdiction over AMTRAK and BNSF further exists pursuant to Illinois' long arm statute, 735 ILCS 5/2-209.

10. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 and 45 U.S.C. § 56 because a substantial part of the events or omissions giving rise to the claim occurred in this District and AMTRAK and BNSF engaged in substantial business activities in the State of Illinois.

### III. NATURE OF OCCURRENCE

11. On and before September 25, 2021, Defendant AMTRAK was a corporation doing business as a common carrier engaged in the transportation of passengers between various destinations in the states of Illinois and Montana.

---

[1] AMTRAK is owner and operator of Chicago's Union Station, the departure point for fare-paying passengers on the *Empire Builder*.

3

12. Amtrak's state-of-the-art Chicago Control Center at Chicago Union Station manages and dispatches Amtrak and other rail traffic in four geographically separate areas and its operations involve interconnections with territories owned by BNSF.

13. In 2019, Amtrak operated eight National Network trains and eight state supported corridor services in Illinois.

14. At the end of 2019 there were 394,969 members of the Amtrak Guest Rewards program in Illinois.

15. Amtrak spent $150,827,484 on goods and services in Illinois in FY19, with approximately $42,000,000 of that being spent in Cook County, Illinois.

16. At the end of 2019, Amtrak employed 1,284 Illinois residents and paid total wages of $101,885,672 to Amtrak employees living in the State.

17. Amtrak operates a switching and maintenance facility in Chicago at 1400 S. Lumber Street that is responsible for upkeep of coaches, sleeping and food service cars, baggage cars, and locomotives used on all trains serving Chicago. This includes over half of AMTRAK'S National Network trains. Trains are serviced, cleaned, stocked, fueled, and maintained at this location.

18. Defendant BNSF owns and is responsible for a substantial portion of railroad track upon which the *Empire Builder* 7/27 train traveled on throughout its trip, which originated in a Chicago, Illinois railyard coextensive with AMTRAK'S railyard at 1400 S. Lumber Street.

19. Moreover, BNSF's Cicero railyard, also in this District, serves as a major transportation hub that links the Midwest with the Pacific Northwest and plays a vital role in the interstate transportation of a wide variety of goods and commodities.

20. BNSF'S Cicero railyard also frequently serves as the destination point for foreign imports shipped across the Pacific Ocean, which are shipped to the Pacific Northwest, then travel by rail through the Cicero railyard to points in the Midwest, Eastern Seaboard, and beyond.

21. AMTRAK trains also pass through BNSF Cicero railyard on a daily basis.

22. Upon information and belief, on and before September 25, 2021, BNSF was a host railroad pursuant to 49 USC § 24101 *et seq*.

23. AMTRAK pays host railroads for use of their tracks.

24. Upon information and belief, BNSF is a host railroad for five of Amtrak's services in Illinois, including the *Empire Builder* service.

25. Upon information and belief, on and before September 25, 2021, BNSF permitted AMTRAK to have access to the host rail line upon which the *Empire Builder* 7/27 train was traveling pursuant to an operating agreement.

26. Upon information and belief, BNSF representatives were stationed at the Chicago Control Center in Chicago, Illinois on the day the AMTRAK *Empire Builder* 7/27 train departed Chicago.

27. Upon information and belief, on and before September 25, 2021, BNSF representatives stationed at the Chicago Control Center in Chicago, Illinois were responsible for communicating timetables, temporary speed restrictions, permanent speed restrictions and any maintenance on the rail to AMTRAK Crews operating out of Chicago.

28. Upon information and belief, on and before September 25, 2021, BNSF was responsible for sending "timetables" to AMTRAK's Crew in Chicago regarding permanent and temporary speed restrictions.

29. Upon information and belief, BNSF did not communicate that any maintenance was being performed on the track at and around the East Buelow switch point before AMTRAK *Empire Builder* 7/27 train left Chicago.

30. Upon information and belief, BNSF did not communicate information regarding the true condition of the track at and around the East Buelow switch point.

31. On September 25, 2021, Defendant AMTRAK through its employees and/or agents, operated, managed, maintained, supervised, owned, designed, constructed, and/or controlled the AMTRAK *Empire Builder* 7/27 train, which originated in Chicago, Illinois and was enroute to Seattle, Washington.

32. Upon information and belief, the AMTRAK *Empire Builder* 7/27 train was operated by employees and/or agents of Defendant AMTRAK.

33. Defendant AMTRAK marketed and sold Plaintiff and Plaintiff's minor tickets for the *Empire Builder* 7/27 train. Both Plaintiff TAMMY KAMRUD and ASPYN KAMRUD, a minor, were fare paying passengers on the *Empire Builder* 7/27 train.

34. On and before September 25, 2021, Defendant BNSF through its employees and/or agents, operated, managed, maintained, supervised, owned, designed, constructed, and/or controlled the railroad tracks that the AMTRAK *Empire Builder* 7/27 train traveled upon during the aforementioned trip.

35. At approximately 3:55 p.m. on September 25, 2021, the AMTRAK *Empire Builder* 7/27 train traveled on a segment of railroad track near Joplin, Montana which was operated, managed, maintained, supervised, owned, designed, constructed and/or controlled, or contracted to operate, manage, maintain, supervise, own and/or control by Defendant BNSF.

36. On and before September 25, 2021 at approximately 3:55 p.m. an unsafe condition existed on the railroad track on which the AMTRAK *Empire Builder* 7/27 train traveled at or near the East Buelow switch point.

37. In the alternative, on and before September 25, 2021 at approximately 3:55 p.m. an unsafe condition existed on the AMTRAK *Empire Builder* 7/27 train as it traveled at or near the East Buelow switch point.

38. On September 25, 2021, at approximately 3:55 p.m., AMTRAK *Empire Builder* 7/27 train approached the East Buelow switch point traveling approximately 78 mph.

39. On September 25, 2021 at approximately 3:55 p.m. the AMTRAK *Empire Builder* 7/27 train derailed at or near the East Buelow switch point causing serious injuries to the Plaintiffs and other passengers on board the train. Eight of the cars derailed with four of them being turned on their sides.

40. As a result, Plaintiffs TAMMY KAMRUD and ASPYN KAMRUD, a minor, were traumatized and sustained injuries for which they were hospitalized for care and treatment.

## IV. CLAIMS FOR RELIEF

41. Plaintiffs' injuries, damages, and losses were proximately caused by Defendant AMTRAK and BNSF's wrongful conduct under common law, federal and state statutes and regulations, rendering Defendants liable and at fault for all injuries and damages.

## COUNT I
## TAMMY KAMRUD
## NEGLIGENCE
## (AMTRAK)

42. Paragraphs 1 through 41 of this Complaint are incorporated herein by reference as though fully set forth herein.

43. Upon information and belief, Defendant AMTRAK owns, maintains, and operates the railcars and engines that comprised the AMTRAK *Empire Builder* 7/27 train.

44. On and before September 25, 2021, Defendant AMTRAK had a duty to safely operate, inspect, maintain, and repair the railcars and engines that comprised the AMTRAK *Empire Builder* 7/27 train.

45. On and before September 25, 2021, Defendant AMTRAK had a duty to inspect, maintain, and repair the rail upon which the AMTRAK *Empire Builder* 7/27 train operated.

46. Defendant AMTRAK, through its agents and/or employees, was a common carrier and owed its passenger, Plaintiff, TAMMY KAMRUD, the highest duties of care, as well as duties of ordinary and reasonable care.

47. Defendant AMTRAK, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

   a. Failed to install and render operable proper train-control safety;
   b. Failed to institute and comply with a slow-order/temporary speed restriction for the area of track at or near the East Buelow switch point;
   c. Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;
   d. Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;
   e. Failed to properly train its agents and/or employees in the safe operation, inspection, maintenance, and repair of the railcars and engines;
   f. Failed to properly supervise its agents and/or employees in the proper safe operation, inspection, maintenance, and repair of the railcars and engines;
   g. Failed to properly maintain the rail cars and engines in a safe condition for the operation of passenger trains;

    h. Failed to properly operate, inspect, maintain, and repair the railcars and engines in accordance with applicable regulatory and/or industry standards;

    i. Failed to properly operate, inspect, maintain, and repair the railcars and engines to ascertain whether they were in a safe condition for use as a passenger train before commencing operation;

    j. Failed to properly train its agents and/or employees in the safe maintenance of the train track;

    k. Failed to properly supervise its agents and/or employees in the proper maintenance of the train track;

    l. Failed to properly maintain the railroad tracks in a safe condition for the passage of passenger trains;

    m. Failed to properly maintain the railroad tracks in accordance with applicable regulatory and/or industry standards;

    n. Failed to properly inspect the track to ascertain whether it was in a safe condition for the passage of passenger trains before returning the track to service;

    o. Failed to provide the proper track surface conditions, including but not limited to, proper runoff, as required by applicable regulatory and/or industry standards;

    p. Failed to properly maintain the track geometry in a safe condition for the passage of passenger trains;

    q. Failed to inspect, detect, and/or mitigate internal rail flaws, that caused and/or contributed to a broken rail.

48. Defendant AMTRAK is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public.

## COUNT II
## A.K.
## NEGLIGENCE
## (AMTRAK)

9

49. Paragraphs 1 through 41 of this Complaint are incorporated herein by reference as though fully set forth herein.

50. Upon information and belief, Defendant AMTRAK owns, maintains, and operates the railcars and engines that comprised the AMTRAK *Empire Builder* 7/27 train.

51. On and before September 25, 2021, Defendant AMTRAK had a duty to safely operate, inspect, maintain, and repair the railcars and engines that comprised the AMTRAK *Empire Builder* 7/27 train.

52. On and before September 25, 2021, Defendant AMTRAK had a duty to inspect, maintain and repair the rail upon which the AMTRAK *Empire Builder* 7/27 train operated.

53. Defendant AMTRAK, through its agents and/or employees, was a common carrier and owed its passenger, Plaintiff's minor, ASPYN KAMRUD, the highest duties of care, as well as duties of ordinary and reasonable care.

54. Defendant AMTRAK, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

   a. Failed to install and render operable proper train-control safety;

   b. Failed to institute and comply with a slow-order/temporary speed restriction for the area of track at or near the East Buelow switch point;

   c. Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;

   d. Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;

   e. Failed to properly train its agents and/or employees in the safe operation, inspection, maintenance, and repair of the railcars and engines;

f. Failed to properly supervise its agents and/or employees in the proper safe operation, inspection, maintenance, and repair of the railcars and engines;

g. Failed to properly maintain the rail cars and engines in a safe condition for the operation of passenger trains;

h. Failed to properly operate, inspect, maintain and repair the railcars and engines in accordance with applicable regulatory and/or industry standards;

i. Failed to properly operate, inspect, maintain and repair the railcars and engines to ascertain whether they were in a safe condition for use as a passenger train before commencing operation;

j. Failed to properly train its agents and/or employees in the safe maintenance of the train track;

k. Failed to properly supervise its agents and/or employees in the proper maintenance of the train track;

l. Failed to properly maintain the railroad tracks in a safe condition for the passage of passenger trains;

m. Failed to properly maintain the railroad tracks in accordance with applicable regulatory and/or industry standards;

n. Failed to properly inspect the track to ascertain whether it was in a safe condition for the passage of passenger trains before returning the track to service;

o. Failed to provide the proper track surface conditions, including but not limited to, proper runoff, as required by applicable regulatory and/or industry standards;

p. Failed to properly maintain the track geometry in a safe condition for the passage of passenger trains;

q. Failed to inspect, detect and/or mitigate internal rail flaws, that caused and/or contributed to a broken rail.

55. Defendant AMTRAK is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public

**COUNT III**
**TAMMY KAMRUD**
**NEGLIGENCE**
**(BNSF)**

56. Paragraphs 1 through 41 of this Complaint are incorporated herein by reference as though fully set forth herein.

57. Upon information and belief, Defendant BNSF owns, maintains, and operates a substantial portion of the train tracks traveled upon by the AMTRAK *Empire Builder* 7/27 train including where the derailment occurred.

58. On and before September 25, 2021, Defendant BNSF had a duty to inspect, maintain, and repair the train tracks, including, but not limited to, the rails, ties, fasteners, anchors, ballast, subgrade, switch(s), frog(s) and other track appurtenances to ensure they were in good and safe condition at all times for use by passenger rail cars like the AMTRAK *Empire Builder* 7/27 train.

59. Defendant BNSF, through its agents and/or employees, was a common carrier and owed Plaintiff, TAMMY KAMRUD the highest duties of care, as well as duties of ordinary and reasonable care.

60. Defendant BNSF, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

    a. Failed to install and render operable proper train-control safety;

    b. Failed to issue a slow-order/temporary speed restriction for the area of track at or near the East Buelow switch point;

    c. Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;

d. Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;

e. Failed to properly train its agents and/or employees in the safe maintenance of the train track;

f. Failed to properly supervise its agents and/or employees in the proper maintenance of the train track;

g. Failed to properly maintain the railroad tracks in a safe condition for the passage of passenger trains;

h. Failed to properly maintain the railroad tracks in accordance with applicable regulatory and/or industry standards;

i. Failed to properly inspect the track to ascertain whether it was in a safe condition for the passage of passenger trains before returning the track to service;

j. Failed to provide the proper track surface conditions, including but not limited to, proper runoff, as required by applicable regulatory and/or industry standards;

k. Failed to properly maintain the track geometry in a safe condition for the passage of passenger trains;

l. Failed to inspect, detect and/or mitigate internal rail flaws, that caused and/or contributed to a broken rail;

61. Defendant BNSF is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public.

**COUNT IV**
**ASPYN KAMRUD**
**NEGLIGENCE**
**(BNSF)**

62. Paragraphs 1 through 41 of this Complaint are incorporated herein by reference as though fully set forth herein.

13

63. Upon information and belief, Defendant BNSF owns, maintains, and operates a substantial portion of the train tracks traveled upon by the AMTRAK *Empire Builder* 7/27 train including where the derailment occurred.

64. On and before September 25, 2021, Defendant BNSF had a duty to inspect, maintain, and repair the train tracks, including, but not limited to, the rails, ties, fasteners, anchors, ballast, subgrade, switch(es), frog(s) and other track appurtenances to ensure they were in good and safe condition at all times for use by passenger rail cars like the AMTRAK *Empire Builder* 7/27 train.

65. Defendant BNSF, through its agents and/or employees, was a common carrier and owed Plaintiff's minor, ASPYN KAMRUD, the highest duties of care, as well as duties of ordinary and reasonable care.

66. Defendant BNSF, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

    a. Failed to install and render operable proper train-control safety;

    b. Failed to issue a slow-order/temporary speed restriction for the area of track at or near the East Buelow switch point;

    c. Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;

    d. Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;

    e. Failed to properly train its agents and/or employees in the safe maintenance of the train track;

    f. Failed to properly supervise its agents and/or employees in the proper maintenance of the train track;

g. Failed to properly maintain the railroad tracks in a safe condition for the passage of passenger trains;

h. Failed to properly maintain the railroad tracks in accordance with applicable regulatory and/or industry standards;

i. Failed to properly inspect the track to ascertain whether it was in a safe condition for the passage of passenger trains before returning the track to service;

j. Failed to provide the proper track surface conditions, including but not limited to, proper runoff, as required by applicable regulatory and/or industry standards;

k. Failed to properly maintain the track geometry in a safe condition for the passage of passenger trains;

l. Failed to inspect, detect and/or mitigate internal rail flaws, that caused and/or contributed to a broken rail;

67. Defendant BNSF is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public.

**COUNT V**
**TAMMY KAMRUD**
**FAMILY EXPENSE ACT**
**(AMTRAK)**

68. Paragraphs 1 through 67 of this Complaint are incorporated herein by reference as though fully set forth herein.

69. On or about September 25, 2021, and at all times mentioned herein, Plaintiff, TAMMY KAMRUD, was and is the lawful Managing Conservator of ASPYN KAMRUD

70. As a direct and proximate result of one or more of the aforementioned acts and/or omissions of Defendant, AMTRAK, Plaintiff's minor, ASPYN KAMRUD, sustained injuries of a personal, permanent, and pecuniary nature, requiring medical care, and her Managing Conservator,

15

Plaintiff, TAMMY KAMRUD, has become obligated for the medical and hospital expenses incurred for the treatment of said injuries, and brings this action pursuant to the Family Expense Act, 750 ILCS 65/15.

**COUNT VII**
**TAMMY KAMRUD**
**FAMILY EXPENSE ACT**
**(BNSF)**

71. Paragraphs 1 through 67 of this Complaint are incorporated herein by reference as though fully set forth herein.

72. On or about September 25, 2021, and at all times mentioned herein, Plaintiff, TAMMY KAMRUD, was and is the Managing Conservator of ASPYN KAMRUD.

73. As a direct and proximate result of one or more of the aforementioned acts and/or omissions of Defendant, BNSF, Plaintiff's minor, ASPYN KAMRUD, sustained injuries of a personal, permanent, and pecuniary nature, requiring medical care, and her Managing Conservator, Plaintiff, TAMMY KAMRUD, has become obligated for the medical and hospital expenses incurred for the treatment of said injuries, and brings this action pursuant to the Family Expense Act, 750 ILCS 65/15.

**V.     INJURIES, HARM AND DAMAGES**

74. As a direct and proximate result of one or more of the above acts and/or omissions of the Defendants AMTRAK and BNSF, Plaintiffs have suffered serious physical and emotional injuries, requiring past and future medical care, disability, loss of enjoyment of life, pain, anxiety, distress and emotional trauma, physical impairment and disfigurement, pecuniary and economic losses, and other injuries, harm, and noneconomic damages which are ongoing and the total

amount of which will be proven at trial, as well as economic and property damages, including, but not limited to, lost wages and earnings, and lost earnings capacity.

## VI.     PRAYER FOR RELIEF

75.     Plaintiffs claim all economic and non-economic damages, along with all compensatory, pecuniary, exemplary damages, and emotional distress damages.

76.     Plaintiffs reserve the right to seek other damages as appropriate.

WHEREFORE, Plaintiffs pray for judgment against Defendants, NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, and BURLINGTON NORTHERN SANTA FE RAILWAY CO., in such amount as will be proven at the time of trial, together with such other and further relief as the jury or court deems appropriate.

## VII.    JURY DEMAND

PLAINTIFFS demands a trial by jury as to all claims in this action.

DATED this 8th day of July, 2024.


/s/ *Kristofer S. Riddle*
One of the Attorneys for Plaintiffs

Kristofer S. Riddle
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 36th Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Telephone: (312) 251-1160
ksr@cliffordlaw.com

Sean P. Driscoll
**DRISCOLL LAW GROUP**
203 N. LaSalle St.
Suite 2100
Chicago, IL 60601
312-818-4823 (ph)
217-336-2416
SPD@driscoll-lawgroup.com